UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>      vs.<br><br>COREY LEE ROELFSEMA,<br>a/k/a "Butters,"<br><br>                Defendant. | 4:17-CR-40023-02-KES<br><br><br>ORDER DENYING MOTION FOR<br>RELIEF UNDER THE<br>FIRST STEP ACT |

Defendant, Corey Lee Roelfsema, filed a second motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 194. Plaintiff, the United States of America, opposes the motion. Docket 197. For the following reasons, the court denies defendant's second motion for compassionate release.

**BACKGROUND**

On October 4, 2017, a jury found Roelfsema guilty of conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. Docket 107; Docket 108 at 4. On January 4, 2018, the court sentenced Roelfsema to 240 months in custody followed by ten years of supervised release. Docket 153 at 2; Docket 154 at 2-3. His projected date of release is August 28, 2035. Docket 196 at 149.

Roelfsema is incarcerated at FCI Greenville, a medium security federal correctional institution in Greenville, Illinois. Docket 194 at 4; *FCI Greenville,* Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/gre/ (last visited Feb. 23, 2022). The total population at FCI Greenville is 1,149 persons. *FCI Greenville.*

In support of his motion, Roelfsema argues the current circumstances at

FCI Greenville, his family circumstances, and the application of the 841-enhancement[1] due to his prior drug conviction at sentencing warrants compassionate release from custody. Docket 194 at 1; Docket 196 at 151-156. Roelfsema submitted a reduction in sentence application on September 27, 2021. Docket 196 at 151. On December 3, 2021, the warden denied his application. *Id.* at 157. Consequently, Roelfsema filed a pro se motion with the court for compassionate release under the First Step Act. Docket 194.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act (FSA). Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants in certain circumstances to file motions with the court seeking compassionate release. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a reduction in sentence must take into consideration the 18 U.S.C. § 3553(a) sentencing factors and be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement, which was adopted before the FSA was passed, requires both "extraordinary and compelling reasons" to warrant a sentence reduction and that the defendant not pose a

---

[1] Roelfsema references an 841-enhancement throughout his filings. But he actually is referring to the 851 enhancement that was applied by the Court under 21 U.S.C. § 851.

danger to the safety of others." USSG § 1B1.13(1)-(2) (Nov. 2018). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Roelfsema argues that the global COVID-19 pandemic, his family circumstances, the application of the 851-enhancement to his case, and the current conditions of FCI Greenville satisfy the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 194 at 1; Docket 196 at 151-56.

## I.    Administrative Exhaustion

Previously, only the BOP Director had the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

On September 27, 2021, Roelfsema submitted to the warden a reduction in sentence application due to COVID-19. Docket 196 at 151-56. On December 3, 2021, the warden denied his application. *Id.* at 157. Having presented his request to the warden and being denied, and hearing no objection from the United States, the court will presume Roelfsema has satisfied the administrative exhaustion requirement and will review the matter on the merits.[2]

---

[2] The warden's response states that if Roelfsema is not satisfied with the decision, he may commence an appeal through the administrative remedy process within 20

## II.     Extraordinary and Compelling Reasons

The Sentencing Commission was directed by Congress to describe what "should be considered extraordinary and compelling reasons" for compassionate release and fashion "the criteria to be applied and a list of specific examples." *See* 28 U.S.C. § 994(t). The Sentencing Commission did so by limiting "extraordinary and compelling reasons" to four categories. USSG § 1B1.13, cmt. n.1(A)-(C). The four categories pertain to a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, and (4) compelling family circumstances. *Id.* A fifth catch-all category also exists for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the BOP. USSG § 1B1.13, cmt. n.1(D).

The court has detailed the governing law and the analysis it uses when confronted with a compassionate release motion in many previous orders. *E.g.*, *United States v. Shields*, 3:07-CR-30106-01-KES, 2021 WL 765001, at *2-3 (D.S.D. Feb. 26, 2021); *United States v. Muhs*, 4:19-CR-40023-02-KES, 2021 WL 534517, at *2-3 (D.S.D. Feb. 12, 2021); *United States v. Adame*, 4:18-CR-40117-05-KES, 2020 WL 7212096, at *2-3 (D.S.D. Dec. 7, 2020); *United States v. Nyuon*, 4:12-CR-40017-01-KES, 2020 WL 7029873, at *2-3 (D.S.D. Nov. 30, 2020). The court has assumed the policy statements still apply to compassionate release motions brought under the FSA and utilizes USSG § 1B.13, Notes 1(A)-(D) to guide its analysis. *See, e.g.*, *Muhs*, 2021 WL 534517, at *3.

---

days of the receipt of the response. Docket 194 at 3. There is no indication that Roelfsema appealed the decision administratively.

Roelfsema contends that the ongoing COVID-19 pandemic in combination with the current conditions of FCI Greenville, his family circumstances, and the 851-enhancement applied at sentencing satisfies the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 194 at 1; Docket 196 at 151-56. Therefore, the court will analyze his circumstances under the medical conditions category, USSG § 1B1.13 Note 1(A), the family circumstances category, USSG § 1B1.13 Note 1(B), and the catch-all provision, USSG § 1B1.13 Application Note 1(D).

Assuming the court's discretion to consider compassionate release is at least as broad as the outdated policy statement of the Sentencing Commission, Roelfsema has failed to show that his reasons for release rise to the level of "extraordinary and compelling" circumstances justifying a reduction in sentence.

### A.   Medical Conditions Category, Note 1(A)

As relevant here, the medical conditions category applies when the defendant is suffering from a serious physical or medical condition that substantially diminishes his ability to provide self-care within a correctional facility and from which he is not expected to recover. USSG § 1B1.13 cmt. n.1(A)(ii)(I).

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. The Centers for Disease Control and Prevention (CDC) updated its current understanding of these risks. *See People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention (Feb. 15, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The CDC states individuals with the following conditions are more likely to become very sick with COVID-19: cancer, chronic kidney disease,

5

chronic liver disease (such as alcohol-related liver disease, non-alcoholic fatty liver disease, autoimmune hepatitis, and cirrhosis), chronic lung diseases (including moderate to severe asthma, bronchiectasis, bronchopulmonary dysplasia, chronic obstructive pulmonary disease (COPD), emphysema, chronic bronchitis, interstitial lung disease, idiopathy pulmonary fibrosis, pulmonary embolism, and pulmonary hypertension), cystic fibrosis, dementia or other neurological conditions, diabetes (type 1 or type 2), having certain disabilities (such as ADHD, cerebral palsy, birth defects, intellectual and developmental disabilities, learning disabilities, spinal cord injuries, or down syndrome), heart conditions (such as heart failure, coronary artery disease, cardiomyopathies, or hypertension), HIV infection, immunocompromised state (having chemotherapy or a solid organ transplant), mental health conditions (having mood disorders, including depression, and schizophrenia spectrum disorders), being overweight or obese, partaking in little or no physical activity, pregnancy, sickle cell disease or thalassemia, being a current or former smoker, having a solid organ or blood stem cell transplant, stroke or cerebrovascular disease, substance abuse disorders (such as alcohol, opioid, or cocaine use disorder), and tuberculosis. *Id.*

The court has reviewed the medical records submitted in this case. Currently, Roelfsema does not suffer from any medical conditions. Docket 196 at 30, 143. Additionally, he is not taking any prescribed medications. *See id.* at 81, 137. He was placed on quarantine and tested negative for COVID-19 on three dates in November of 2020. *Id.* at 156. His other medical conditions have been categorized as resolved or in remission, which leads the court to believe that Roelfsema is adequately healthy. *Id.* at 156-57.

The court has required a more particularized showing of a risk of serious illness from COVID-19 when evaluating compassionate release motions. Roelfsema's health conditions do not prevent him from providing self-care in a correctional facility setting, and his medical conditions do not amount to extraordinary and compelling circumstances.

Additionally, the COVID-19 pandemic alone is insufficient to warrant early release. The BOP has made significant changes to correctional operations since the pandemic started in early 2020. *See BOP Modified Operations*, Fed. Bureau of Prisons, (Nov. 25, 2020), https://www.bop.gov/coronavirus/. These include sanitary and safety measures, restrictions on movement, and visitation restrictions, among others. *Id.* The BOP has also transferred many thousands of inmates to home confinement. *See Frequently Asked Questions Regarding Potential Inmate Home Confinement in Response to the COVID-19 Pandemic*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 23, 2022). Since March 26, 2020, 38,365 inmates have been placed in home confinement. *Id.* These measures have led to a dramatic decrease in the total BOP population, which in turn has increased opportunities for social distancing and reduces the strain on BOP resources.

The court believes Roelfsema's medical conditions are appropriately managed at FCI Greenville, the facility is engaged in appropriate efforts to protect inmates against the spread of COVID-19, and the facility would act to treat any inmate who does contract COVID-19. The fact that FCI Greenville had a COVID-19 outbreak does not negate such conclusions. The data for FCI Greenville demonstrates a widespread COVID-19 outbreak that was ultimately contained. *See BOP Modified*

*Operations*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 23, 2022). There were no deaths as a result, and 816 inmates have recovered. *Id.* The total population at FCI Greenville is currently 1,149 persons. *See FCI Greenville.* This persuades the court that FCI Greenville has acted appropriately to treat inmates who do contract COVID-19. The court believes the facility will continue to appropriately treat inmates who do so.

The BOP's vaccination program for staff and inmates is another protective measure warranting consideration in this stage of the COVID-19 pandemic. The BOP has implemented a COVID-19 vaccination plan to protect inmates and staff and limit the transmission of COVID-19 within the facilities. *See COVID-19*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 23, 2022). As of February 16, 2022, 298,982 doses have been administered systemwide. *Id.* At FCI Greenville, 194 staff and 1,152 inmates were fully inoculated as of February 23, 2022. *Id.* Because the total inmate population of FCI Greenville is 1,149 persons, the data shows that a great majority of the prison population is vaccinated against COVID-19. *Id.*; *See FCI Greenville.* Roelfsema refused a Pfizer vaccine on April 1, 2021. Docket 196 at 136. This leads the court to conclude Roelfsema is not overly concerned about the risk of infection.

In light of the above, the court finds Roelfsema's circumstances do not clear the high bar necessary to warrant compassionate release for "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i).

### B.    Family Circumstances Category, Note 1(C)

To justify compassionate release under the family circumstances category, USSG § 1B1.13 Note 1(C), the defendant must demonstrate one of the following:

8

(1) the death or incapacitation of the caregiver of the defendant's minor children or (2) the "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." Roelfsema claims his mother was recently diagnosed with cancer and COVID-19. Docket 194 at 1; Docket 196 at 151. Roelfsema's father was also diagnosed with COVID-19. Docket 194 at 1. Roelfsema argues that he should be allowed to go home instead of being in a high-risk prison environment for COVID-19, and that he should be considered for compassionate release because he intends to be his mother's caretaker. Docket 196 at 151.

The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *Jones*, 836 F.3d at 899. Roelfsema has failed to substantiate any of his claims. There is no evidence in the record that demonstrates his mother's depleting health, or his father's COVID-19 diagnosis. Docket 196 at 151; Docket 194. Even if the court were to consider that Roelfesma's mother and father may be incapacitated for purposes of Note (1)(C), the family circumstances category specifically references care needed for minor children or a spouse. See USSG § 1B1.13, cmt. n.1(C). Though the court is not unsympathetic, Roelfesma does not qualify for release under the family circumstances category.

### C.   Catch-all Category, Note 1(D)

The catch-all category in Note 1(D) does not result in a different outcome. The catch-all category allows for release if there are extraordinary and compelling reasons other than, or in combination with, those identified in 1(A) through 1(C). USSG § 1B1.13, cmt. n.1(D). Roelfsema claims that an 851-enhancement due to his

criminal history was applied in error at sentencing and he raises various issues with his case. Docket 196 at 152-57. Furthermore, he adds that he was not able to file a timely appeal due to lack of resources. *Id.* at 153-55.

The court concludes the enhancement was applied appropriately. On September 25, 2017, the government filed an information pursuant to 21 U.S.C. § 851(b) notifying Roelfsema of its intention to seek an increased punishment due to Roelfsema's prior conviction for a felony drug offense. Docket 77. The statute requires the defendant to affirm or deny whether he was previously convicted of the alleged felony drug offense before a sentence can be imposed. *See* 21 U.S.C. § 851. The Presentence Investigation Report (PSR) listed the prior conviction in his criminal history category. Docket 140 ¶ 41. No objections to the PSR were filed challenging the conviction and Roelfsema orally affirmed the conviction at sentencing. Docket 141; *See* FTR Gold Recording at Jan. 04, 2018, 3:08:02. As a result of the enhancement, when Roelfsema was sentenced in 2017, he faced a mandatory minimum sentence of 240 months in custody. Docket 141 ¶¶ 75-76.

Roelfsema further challenges his mandatory minimum of 240 months under the Sentencing Guidelines. Docket 194 at 1. He argues that since the passing of the FSA, the guidelines reflect a mandatory minimum of 180 months, to which he claims he is entitled. *Id.* But because Roelfsema was sentenced before the enactment of the FSA, he does not qualify for a sentence reduction under Section 404. The FSA "does not make the Section 401 amendments retroactive." *United States v. Grant*, 813 F. App'x. 246, 249 (8th Circ. 2020). Section 401 is the part of the FSA that amended 21 U.S.C. §§ 802 and 841 and redefined certain mandatory minimums for convictions under § 841. Section 404, which applies to crack cocaine

10

offenses, was made retroactive. And this court has previously found that § 404 can be applied retroactively only to crack cocaine offenses. *See United States v. Chantharath*, No. 4:10-CR-40004-01-KES, 2019 WL 11664520, at *1 (D.S.D. Dec. 16, 2019), *aff'd*, No. 20-1017, 2020 WL 8270548 (8th Cir. Feb. 6, 2020). Given that Roelfsema was convicted of an offense that involved the distribution of methamphetamine, he is not entitled to a reduction in sentence under the FSA.

Lastly, the court previously held that Roelfsema's time for appeal of his judgment of conviction has expired. A judgment was filed on January 4, 2018, and more than 14 days have passed since the filing of the judgment. Docket 154. In conclusion, the court finds that the circumstances cited by Roelfsema do not warrant a reduction in sentence under the catch-all category, Note 1(D).

### III.    Sentencing Factors of § 3553(a)

The 3553(a) sentencing factors further show that compassionate release is not warranted. Roelfsema's conviction stems from a conspiracy to distribute a controlled substance. At trial, various witnesses testified to Roelfsema's involvement in methamphetamine distribution. Docket 140 ¶¶ 8, 10-17. Roelfsema sold and purchased various amounts of methamphetamine during the conspiracy. *Id.* One of the witnesses was a co-defendant and Roelfsema's childhood friend. *Id.* ¶ 10. He testified that he began selling methamphetamine to Roelfsema in 2016. *Id.* ¶ 11. Roelfsema purchased 4-ounce quantities on numerous occasions. *Id.* Roelfsema also helped his source complete a drug transaction that involved three kilograms of methamphetamine. *Id.* ¶¶ 12, 14-15. The total amount of drugs attributed to the defendant was roughly three kilograms. *Id.* ¶ 18.

The total offense level was calculated as 32 and Roelfsema was in criminal

history category IV. *Id.* ¶¶ 32, 45. As a result, the guideline range was 168 to 210 months in custody; however, the offense had a mandatory minimum of 240 months in custody. *Id.* ¶¶ 75-76. The court sentenced Roelfsema to the mandatory minimum of 240 months in custody. Docket 154 at 2. Roelfsema has served approximately 17% of his full term and 20% of his statutory term. Docket 196 at 150. After careful consideration, the court concludes Roelfsema's sentence of 240 months continues to be appropriate for the seriousness of the crime to which he was found guilty.

## CONCLUSION

Roelfsema has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that the defendant's second motion for compassionate release under the First Step Act (Docket 194) is denied.

Dated February 23, 2022.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE