UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>COREY LEE ROELFSEMA, a/k/a "Butters,"<br><br>Defendant. | 4:17-CR-40023-02-KES<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE** |

Defendant, Corey L. Roelfsema, filed a third *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Docket 211. The Federal Public Defender filed a notice of intent not to file supplemental briefing on Roelfsema's behalf. Plaintiff, the United States of America, filed its response opposing the motion. Docket 213. Roelfsema filed his reply to the United States' response. Docket 214. For the following reasons, Roelfsema's motion for compassionate release is denied.

## BACKGROUND

In April of 2017, Roelfsema was charged with one count of conspiracy to distribute a controlled substance. Docket 28. On October 4, 2017, a jury found Roelfsema guilty of that charge in violation of 21 U.S.C. §§ 841(a)(1) and 846. Dockets 106, 107. On January 4, 2018, the court sentenced Roelfsema to 240 months in custody followed by 10 years of supervised release. Dockets 153, 154. Roelfsema's projected release date is April 12, 2033. *See Find an Inmate*,

1

Fed. Bureau of Prisons, (register number 17027-273; last visited Feb. 24, 2026).

As grounds for relief in his current motion, Roelfsema cites 1) changes in the law governing 21 U.S.C. § 851 enhancements, 2) his view that methamphetamine drug purity should no longer be a proxy for culpability, 3) his rehabilitation since the start of his incarceration, and 4) unwarranted sentencing disparities between him and similarly situated defendants who have been granted compassionate release. Docket 211 at 14-28.

## DISCUSSION

Sentences are final judgments, meaning a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C § 3582(c). Congress passed The First Step Act (FSA) in 2018, facilitating an exception to the finality of sentences. Pub. L. No. 115-391, 132 Stat. 5194 (2018). In relevant part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants to file motions with the court seeking compassionate release. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). A reduction in sentence must consider the 18 U.S.C. § 3553(a) sentencing factors and be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(ii). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

The Sentencing Commission's policy statement on compassionate release requires "extraordinary and compelling reasons" to warrant a sentence reduction and that the defendant not pose a danger to the public. U.S.S.G. § 1B1.13(a)-(b). The policy statement was amended on November 1, 2023, to reflect the FSA's authorization for federal courts to rule on compassionate release motions initiated by defendants. U.S.S.G § 1B.13, amend. 814. Amendment 814 to the Sentencing Commission policy statement also expands the list of extraordinary and compelling reasons justifying compassionate release from federal detention. *See id.*; *2023 Amendments in Brief*, U.S. Sent'g Comm'n, https://www.ussc.gov/sites/default/files/pdf/amendment-process/amendments-in-brief/AIB_814.pdf (last visited Feb. 24, 2026).

**I. Administrative Exhaustion**

Before the FSA's passage, only the Bureau of Prisons (BOP) Director had the authority to bring a compassionate release motion on a defendant's behalf. *See* 18 U.S.C. § 3582(c)(1)(A) (2002), *amended by* 18 U.S.C. § 3582(c)(1)(A) (2018). With the enactment of the FSA, Congress has permitted courts to grant a motion for a reduction in sentence filed by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Roelfsema submitted a request for compassionate release to the warden of FCI Thomson on February 13, 2025. Docket 211-1 at 2. The warden denied

3

the request on March 19, 2025. *Id.* at 4. The United States concedes that Roelfsema has exhausted his administrative remedies. Docket 213 at 4. Thus, the court reviews Roelfsema's motion on the merits.

## II. Extraordinary and Compelling Reasons

Congress directed the Sentencing Commission to describe what "should be considered extraordinary and compelling reasons" for compassionate release and fashion "the criteria to be applied and a list of specific examples." *See* 28 U.S.C. § 994(t). The Sentencing Commission's policy statement, as amended in November of 2023, responded by identifying six categories of "extraordinary and compelling reasons" justifying compassionate release. U.S.S.G § 1B1.13(b)(1)-(4), amend. 814. The first four categories pertain to a defendant's: (1) medical circumstances; (2) advanced age and deteriorating health in combination with the amount of time served; (3) compelling family circumstances; and (4) victimization by correctional staff while in custody. *Id.* A fifth catch-all category exists for a "circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). The sixth category arises if the defendant has received an unusually long sentence, served at least ten years, and a change in law produces a gross disparity between the sentence being served and the sentences likely to be imposed at the time the motion was filed, after considering the individual circumstances of the defendant. U.S.S.G. § 1B1.13(b)(6).

4

Rehabilitation of the defendant is not an extraordinary and compelling reason in and of itself but "may be considered in combination with other circumstances in determining whether and to what extent a reduction" in sentence is warranted. U.S.S.G. § 1B1.13(d). An extraordinary and compelling reason need not be unforeseen at the time of sentencing to warrant compassionate release. U.S.S.G. § 1B1.13(e).

### A. Changes in 21 U.S.C. § 851 Enhancements

Roelfsema argues that the reductions in penalties for § 851 enhancements, specifically mandatory minimums, qualify as an extraordinary and compelling reason for relief. Docket 211 at 14-15. He specifically argues that "[u]nder the First Step Act, the mandatory minimum sentences for certain non-violent federal drug offenses have been reduced." *Id.* at 14. Roelfsema states that "[t]his includes specifically the mandatory minimum sentences for repeat offenders." *Id.* He argues that "[u]nder the First Step Act as currently amended, the 851 enhancements for defendants convicted of 10[-]year minimum drug charges would change to 15 years for those with one prior and 25 years for those with two." *Id.* at 15. He also claims that "[u]nder the current scheme, the government often does not seek 851 enhancements where the defendant agrees to plead guilty[.]" *Id.* He argues that "[a]s things stand now, federal prosecutors often decline to seek mandatory life due to the perceived severity of that sentence, even for repeat offenders." *Id.* Roelfsema states that if he "was sentenced after the passage of the First Step Act," his guideline range

5

"would be no more than 15 years" on count 1 because "the government would not seek [] an enhanced penalty under 21 U.S.C. § 851." *Id.*

The United States argues that while "[c]hanges to the § 851 penalties came as a result of the First Step Act, including reducing and restricting sentencing enhancements based on prior drug felonies[,]" they "were not retroactive." Docket 213 at 4; *see also* First Step Act § 401(c). Therefore, according to the United States, this non-retroactive change in law cannot contribute to a finding by this court "of 'extraordinary and compelling reasons' for a reduction in sentence under § 3582(c)(1)(A)." Docket 213 at 5 (quoting *United States v. Crandall*, 25 F.4th 582, 586 (8th Cir. 2022)).

The United States further argues that "it is not true that the government categorically no longer seeks enhanced penalties under § 851." *Id.* at 5. Rather, it asserts that "[t]hose directives can change with administrations, but they are discretionary under all circumstances." *Id.* Therefore, the United States contends that "Roelfsema's argument on this point is conjecture at best and not supported by any authority." *Id.*

The United States is correct that the changes to the § 851 penalties were enacted as a result of the First Step Act. The § 851 changes did include reducing and restricting sentencing enhancements based on prior drug felonies; however, the changes to the law were not retroactive. The Eighth Circuit has held that "a non-retroactive change in law, whether offered alone or in combination with other factors, cannot contribute to a finding of 'extraordinary and compelling reasons' for a reduction in sentence under

6

§ 3582(c)(1)(A)." *Crandall*, 25 F.4th at 586. Thus, Roelfsema's arguments utilizing the First Step Act and the changes to the § 851 penalties cannot be considered by this court as an extraordinary and compelling reason for a sentence reduction.

### B. Methamphetamine Drug Purity

Roelfsema argues that there is a "need for reform in drug sentencing laws and a more nuanced approach to addressing drug-related offenses" because "[t]he Guideline's reliance on drug purity as a factor for determining an individual's role within the organization is outdated and irrelevant in today's drug landscape." Docket 211 at 16-22. He thus challenges the Guidelines' use of purity in calculating base offense levels. *Id.*

The United States argues that "[p]urity was not used for determining the base offense level in Roelfsema's case." Docket 213 at 5. The United States advises that to its knowledge, "no change in the Guidelines since Roelfsema's sentencing would change the base offense level in his case." *Id.* It argues that "[g]iven that, the issue of pure as opposed to mixed methamphetamine for Guidelines calculations is not relevant here and cannot be a basis for compassionate release." *Id.*

The United States is correct. Roelfsema's base offense level was calculated based on the guideline for a violation of 21 U.S.C. § 841(a)(1), which is USSG § 2.D.1.1. and provides that "an offense involving at least 1.5 kilograms but less than 5 kilograms of methamphetamine has a base offense level of 32." Docket 140 ¶ 24. No additional enhancements were added to

Roelfsema's offense level. *Id.* Based on a total offense level of 32 and a criminal history category of IV, his guideline range for imprisonment was 168 to 210 months. *Id.* ¶ 76. But, because Roelfsema's statutory mandatory minimum sentence was 240 months, his guideline range was 240 months. *Id.* This court is also unaware of any change in the Guidelines that would alter Roelfsema's base offense level in this case or the statutory mandatory minimum. The issue of pure versus a mixture of methamphetamine for guidelines calculations is not relevant and thus not a basis for compassionate relief.

### C. Rehabilitation

Roelfsema argues that his remarkable post-conviction rehabilitation should qualify as an extraordinary and compelling reason for release. Docket 211 at 21-22. He indicates that "he has worked diligently to better himself, actively participating in educational programs that will enhance his skills, productivity, and preparedness for life after release." *Id.* at 21. He argues that "[h]is successful completion of multiple rehabilitation programs has provided him with valuable skills, reflecting his sincere dedication to rebuilding his life." *Id.* Roelfsema advises that during his incarceration, he has "grown into a reflective, empathetic, and responsible individual" and that the "significant time he has already served has allowed for a meaningful personal transformation." *Id.* at 21-22. He argues that his "strong rehabilitative record—programming, work performance, and positive conduct—demonstrates that he is no longer the same person the [c]ourt sentenced years ago." Docket 214 at 9.

8

The United States asserts that "[w]hile it is commendable and encouraging that Roelfsema has undergone what he describes as a meaningful personal transformation, it is not a sufficient ground for compassionate release." Docket 213 at 5. It argues that "even when considered in conjunction with other grounds urged by Roelfsema, his rehabilitative efforts do not constitute an extraordinary and compelling reason for a sentence reduction[,]" and "[t]hey are not unlike what many others engage in while in custody." *Id.* at 6.

Under U.S.S.G. § 1B1.13(d), "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement," although it can be "considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." Although Roelfsema believes he is no longer the same person the court sentenced years ago, the court does not find that his rehabilitation efforts, even when considered in conjunction with the other grounds argued by Roelfsema, reach the threshold for extraordinary and compelling reasons for a sentence reduction.

### D. Unwarranted Sentencing Disparities

Roelfsema urges the court to consider his codefendant's case with respect to the need to avoid unwarranted sentencing disparities. Docket 211 at 22. He sets forth that his codefendant Baade was sentenced to 210 months in custody. *Id.* But, he provides no additional argument as to what he believes the unwarranted sentencing disparity is in relation to this codefendant. Moreover,

9

as the United States recognizes, sentencing disparities between codefendants is not an extraordinary and compelling reason. *See United States v. Hoskins*, 735 F. Supp. 3d 1078, 1084 (S.D. Iowa 2024).

Roelfsema then cites to multiple cases, Docket 211 at 22-23, involving other defendants that he believes are related and relevant to his argument that his sentence is significantly longer than those imposed for the same conduct after the First Step Act and Sentencing Commission amendments, docket 214 at 6. The United States argues that these cases are not relevant. Docket 213 at 6. In particular, it notes that two cases involve drug purity, whereas here, drug purity did not play a role in determining Roelfsema's sentence. *Id.* The United States claims that the other two cases do not show a disparity between two defendants but, rather, "appear to reference disparities between a sentence a defendant did receive and a sentence the same defendant would have received but for a change in the law." *Id.*

Roelfsema argues in his reply that "Amendment 814 to U.S.S.G. § 1B1.13(b)(6) directly addresses this issue, permitting compassionate release when a defendant has served at least 10 years of an 'unusually long sentence' that has become excessive in light of subsequent legal changes." Docket 214 at 8. He asserts that his "motion does not rest on codefendant comparisons. It rests on the fact that his sentence is substantially longer than what Congress and the Sentencing Commission now consider appropriate for the same conduct." *Id.*

U.S.S.G. § 1B1.13(b)(6) provides:

10

> Unusually Long Sentence.—
>
> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

Because Roelfsema has not served at least 10 years of the term of imprisonment and has not identified a retroactive change in the law, he does not qualify for a reduction under U.S.S.G. § 1B1.13(b)(6).

### III. Sentencing Factors of § 3553(a)

The § 3553(a) sentencing factors confirm that compassionate release is not warranted in this case. The first factor the court considers is "the nature and circumstances of the offense and the history and characteristics of the defendant[.]" 18 U.S.C. § 3553(a)(1). Roelfsema's history is replete with drug related offenses. Doc. 140 ¶¶ 39, 41, 42, 44. The crime involved in the instant offense was a conspiracy to distribute between 1.5 and 5 kilograms of methamphetamine. *Id.* ¶ 24. Testimony provided at Roelfsema's trial revealed that in January or February of 2016, Roelfsema was involved in a methamphetamine transaction in which approximately 3 kilograms of methamphetamine were transported from Arizona to Sioux Falls. *Id.* ¶ 18. Further trial testimony indicated that Roelfsema was "directly involved with 3,231.6 grams (3.2 kilograms) of methamphetamine." *Id.* Based on the totality

11

of the evidence in this case, it is reasonable to believe Roelfsema was involved in additional quantities of methamphetamine; however, considering the mandatory minimum custody time, calculating additional quantities had no impact on Roelfsema's guideline range for imprisonment. The court, however, does take this into account when considering the instant motion.

The next factor the court considers is the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[.]" 18 U.S.C. § 3553(a)(2)(A). Roelfsema argues that his offense was serious, "[b]ut after more than eight and a half years of incarceration—42% of his sentence—he has already served a punishment that promotes respect for the law and provides deterrence." Docket 214 at 9. He argues that "[c]ontinuing to incarcerate Roelfsema for a sentence length Congress has rejected as excessive does not further deterrence, but undermines the principle of just punishment." *Id.*

The individuals involved in the instant conspiracy began associating with each other and forming the agreement to distribute methamphetamine in South Dakota while in the custody of the South Dakota Department of Corrections. Docket 140 ¶ 7. Incarceration did not deter this behavior in 2015, and the court does not believe that reducing Roelfsema's sentence would deter similar future behavior. Requiring Roelfsema to serve only 42% of his sentence is not a punishment that promotes respect for the law, nor does it provide deterrence of others.

12

The remaining § 3553(a) factors also do not support a sentence reduction. If the court were to grant compassionate release, similar conduct by others would not be deterred because Roelfsema's punishment would not be severe enough to act as an effective deterrent. *See* 18 U.S.C. § 3553(a)(2)(B). Also, reducing Roelfsema's sentence for such a serious offense would not protect the public from further crimes by him. *See* 18 U.S.C. § 3553(a)(2)(C). Moreover, Roelfsema has not served the twenty-year mandatory minimum sentence applicable to his crime. Requiring him to serve the full sentence promotes respect for the law, provides just punishment for the offense, and protects the public.

Based on the above, the court concludes that Roelfsema's sentence continues to be appropriate for the seriousness of the crime he committed.

## CONCLUSION

Roelfsema has failed to satisfy the extraordinary and compelling reason standard for compassionate release. Thus, it is

ORDERED that Roelfsema's motion for relief under the FSA (Docket 211) is denied.

Dated March 10, 2026.

>                         BY THE COURT:
>
>                         */s/ Karen E. Schreier*
>                         KAREN E. SCHREIER
>                         UNITED STATES DISTRICT JUDGE